**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OLIVIER LE QUEINEC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 1:26-cv-05547<br><br>Judge Joan H. Lefkow<br><br>Magistrate Judge M. David Weisman |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS IDENTIFIED IN FIRST AMENDED SCHEDULE A**

Plaintiff, OLIVIER LE QUEINEC ("Le Queinec" or "Plaintiff"), submits this Memorandum in Support of Plaintiff's Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the seventy-seven Defendants identified in First Amended Schedule A (the "Defaulting Defendants") on Plaintiff's claim for Copyright Infringement (Count I). Each Defaulting Defendant was served by e-mail and electronic publication under this Court's Order [16], and none has appeared.

Plaintiff, a professional fine art and stock photographer, owns the Copyright Registrations that protect the creative content of the Olivier Le Queinec Works. [1] at ¶¶ 5, 8. No one other than Plaintiff and Plaintiff's licensees is authorized to sell goods utilizing the Olivier Le Queinec Works. *Id.* at ¶ 15. On information and belief, the Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Olivier Le Queinec Products. *Id.* at ¶¶ 6, 11. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them. *Id.* at ¶ 7.

Each Defaulting Defendant targets the United States, including Illinois, through the fully interactive online marketplace accounts identified in First Amended Schedule A (the "Defendant Internet Stores"), and has offered to sell and, on information and belief, has sold Infringing Olivier Le Queinec Products to consumers in Illinois. *Id.* at ¶¶ 2, 16.

Plaintiff filed this action on May 13, 2026, alleging Copyright Infringement and seeking statutory damages and injunctive relief. [1]. On May 18, 2026, this Court granted Plaintiff's Ex Parte Motion for Leave to Conduct Expedited Discovery and Service of Process by E-mail and/or Electronic Publication [15] and entered its Order [16] (the "Order"). Paragraph 3 of the Order permitted Plaintiff to complete service of process by electronic publication or by sending an e-mail to the e-mail addresses provided for Defendants by third parties, and paragraph 1 required Amazon Payments, Inc. ("Amazon"), Temu, LLC ("Temu"), Walmart Inc. ("Walmart"), and PayPal, Inc. ("PayPal") to produce records sufficient to determine the Defendants' identities and locations. [16] at ¶¶ 1, 3. The Defaulting Defendants were served on May 26, 2026. [19]; [19-1]. None has entered an appearance or otherwise defended this action. Declaration of Keith A. Vogt ("Vogt Declaration") at ¶ 2.

The evidence supporting service is specific to each Defaulting Defendant, as set forth below. Ten Defaulting Defendants disclose no physical address: their Temu storefronts list the address as "N/A" and the country as "China," and Temu's own records, produced under the Court's Order, contain only e-mail addresses. For seventeen others, Amazon's records state more than one address for the seller, or an address different from the one its storefront displays, in most instances in a different city or province. The remaining Defendants disclose addresses that map searches identify only at the village, hamlet, compound, or courtyard level; addresses associated with entities listed in the PRC registry as cancelled or unreachable; or stalls, self-declared residences,

and directional descriptions ("500 meters southwest of the village committee, west of the road") at which documents could not be delivered. Declaration of Yanling Jiang ("Jiang Decl.") ¶¶ 6–13 & Exs. A, B.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because they directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010) (without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor). This Court has already found that it has personal jurisdiction over Defendants. [16] at 1 (finding "that it has personal jurisdiction over Defendants because Defendants directly target their business activities toward consumers in the United States, including Illinois").

The Defaulting Defendants have targeted sales to Illinois residents by operating Defendant Internet Stores that offer shipping to Illinois, accept payment in U.S. dollars, and, on information and belief, have sold infringing products to residents of Illinois. [1] at ¶ 2. Personal jurisdiction is proper because each Defaulting Defendant is committing tortious acts in Illinois and has wrongfully caused Plaintiff substantial injury in this District. *See, e.g.*, *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624–27 (7th Cir. 2022) (concluding that personal jurisdiction is proper

when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see also, e.g.*, *Garry Walton v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 26-cv-00597 (N.D. Ill. Mar. 25, 2026); *Ruediger Lauktien v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 26-cv-03092 (N.D. Ill. May 7, 2026).

## II. SERVICE OF PROCESS IS PROPER AS TO EACH DEFAULTING DEFENDANT UNDER KANGOL

The Seventh Circuit held in *Kangol* that the Hague Service Convention bars e-mail service on a defendant in China where the Convention applies, but that the district court must first determine whether the Convention applies. *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793, 796 (7th Cir. 2026). The Convention "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. Courts in Schedule A cases "typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Kangol*, 177 F.4th at 799 (quoting *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021)). A plaintiff that "investigated the available physical addresses of online merchant to see if they were valid for service and determined they were not" meets that standard. *NBA Props.*, 549 F. Supp. 3d at 796 (citing *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018)). Plaintiff undertook that investigation and presents all results, including those that provided only partial corroboration of the disclosed addresses.

For each of the 70 PRC Defaulting Defendants, Plaintiff's investigation included: (a) cataloging the address disclosed on the seller profile (or, for the PayPal sellers, the seller's website);

(b) searching that address on Google web search, Google Maps, and Baidu Maps (百度地图), and capturing each result; (c) checking the seller against the Tianyancha (天眼查) PRC business-registry database; and (d) comparing the disclosed address with the address maintained by the platform for the seller, as produced under paragraph 1 of the Order. Jiang Decl. ¶¶ 4–7; Exs. A, B. For the twenty-two Defendants whose names corresponded to an entity registered at the disclosed address, Plaintiff reexamined the current Amazon and Walmart seller profiles and the registry on October 1 and 2, 2026, and repeated the Baidu searches in Chinese characters for eleven of them. *Id.* ¶¶ 5, 7. For the nine Group G Defendants, whose names likewise corresponded to an entity registered at the disclosed address, Plaintiff repeated the Baidu searches in Chinese characters on October 1, 2026 (for No. 67, Plaintiff relies on an earlier Google Maps capture). Id. ¶¶ 5, 7, 11. Plaintiff's counsel, a native Chinese reader, read and interpreted every Chinese-language result, and Plaintiff relies only on Baidu Maps searches conducted in Chinese characters for the correct city. *Id.* ¶¶ 1, 5.

The platforms' records further establish that these addresses are not known. Temu's production provides an e-mail address for each Temu seller but no physical address. Jiang Decl. ¶ 6. For seventeen Defaulting Defendants, Amazon's production lists more than one address, or an address different from the one the storefront displays: No. 2's storefront lists Ningbo, Zhejiang, while Amazon's records list both Ningbo and Gucheng County, Hubei; No. 17's storefront lists Guiyang, Guizhou, while Amazon's records list the Xiong'an New Area of Hebei; No. 27's storefront lists Shijiazhuang, Hebei, while Amazon's records list Bozhou, Anhui; and comparable discrepancies exist for Nos. 1, 4, 5, 6, 10, 11, 14, 15, 18, 23, 24, 25, 28, and 32. *Id.*; Ex. A. PayPal's records contradict the website addresses of Nos. 87 and 88, and Walmart's production lists no legal address for No. 33. *Id.* These discrepancies prevent Plaintiff from verifying the sellers' disclosed

addresses, and a request under the Convention may identify only one address. Where a platform's own records state conflicting addresses, Plaintiff could not determine which address, if any, is a place where the Defendant can be served, and the address most likely to be the Defendant's was not verified as a real, current location at which the Defendant could be served; it is not an address to which a request under the Convention could reliably be directed. Jiang Decl. ¶ 6; Ex. A.

The addresses of all 70 PRC Defaulting Defendants are unknown. Exhibits A and B group these Defendants according to the deficiencies in their address information. The ten Group A Defendants disclose no address beyond "China," leaving no physical address to ascertain or verify. Jiang Decl. ¶ 8; Ex. A. The thirteen Group B Defendants disclose addresses that map searches identify only at the township, village, neighborhood, compound gate, street, or street-number level; for No. 24, Baidu Maps lists an unrelated business at the stated number. *Id.* The nine Group C Defendants disclose addresses that conflict with the registry: the only potentially matching entities are registered in a different province (Nos. 2, 5, 9, 16, and 40), the name matches several unrelated entities, none of which is registered at the disclosed address (Nos. 22, 54, and 71), or the name corresponds only to a Hong Kong company with no connection to the disclosed Kunming address (No. 29). *Id.*; Ex. B. The seven Group D Defendants disclose addresses at which the registered entity has been cancelled (注销) or, for No. 43, has been listed since 2021 as unreachable at its registered address. *Id.* A Central Authority request addressed to a cancelled legal person names an entity that no longer exists. For the twenty-three Defendants in Groups A and B, none of the platform identifiers provides a registered legal name in Chinese characters, and the registry searches identified no entity for any of them. A request naming these Defendants is therefore, as practitioner commentary explains, "assured of failure." Jiang Decl. ¶ 7; Aaron Lukken, *Chinese company names, flawed addresses, and the high likelihood of Hague Service failure*, Hague Law

Blog (Mar. 2024);[1] *see* Aaron Lukken, *A Hague-compliant roadmap for service on "Schedule A" defendants*, Hague Law Blog (July 2024).[2]

Registry searches for the eleven Group E Defendants identified an entity registered at the disclosed address, but the stated location either could not be identified on any map or lacked a unit to which a document could be delivered. Jiang Decl. ¶ 9; Ex. A. No. 6's address is a directional description ("north of the culvert on the west side of Gelao Road, No. 441") that Baidu Maps could not resolve; Nos. 8 and 13 resolve only to a village or hamlet; the addresses of Nos. 21, 44, and 70 identify only a courtyard or building, without a unit, at addresses where eleven, twelve, and five entities are registered; No. 65 provides a self-declared address that no map search could locate; Nos. 56, 63, and 66 resolve to an area or compound in which the stated building, row, or unit does not appear; and No. 14 has since changed the business name and province on its storefront, while Amazon lists several other addresses for it. Id.; Exs. A, B. A registry entry establishes an entity's registration at the stated address but does not establish that documents can be delivered to that Defendant at that location.

The eleven Group F Defendants matched a registry entity, but other records undercut the match. Jiang Decl. ¶ 10; Exs. A, B. Amazon's records list different addresses for five of these Defendants (Nos. 10, 15, 17, 27, and 28). Seven have abnormal-operations listings (经营异常) entered in July 2026 that remain in effect (Nos. 4, 7, 15, 17, 28, 38, and 57); three are among several nearly identical entities, at least one of which has been cancelled (Nos. 7, 28, and 33). As to No. 33, the registry entity whose name matches the storefront' s disclosed business name —

[1] Available at https://www.haguelawblog.com/2024/03/chinese-company-names-flawed-addresses-and-the-high-likelihood-of-hague-service-failure/ (last visited Oct. 5, 2026).
[2] Available at https://www.haguelawblog.com/2024/07/a-hague-compliant-roadmap-for-service-on-schedule-a-defendants/ (last visited Oct. 5, 2026).

广州芸锴商贸有限公司 (Guangzhou Yunkai Trading Co., Ltd.), USCC 91440101MA9ULXCX1L — was deregistered between August 25 and October 2, 2026, and the only near-identical surviving registry entity, 广州芸楷商贸有限公司 (USCC 91440114MAD3P8F74D), is a different company registered in a different district; Plaintiff therefore could not determine which address, if any, is a place where No. 33 can be served. The map searches show that No. 10's address is a directional description measured from a village committee and that No. 15's address pairs a district in one city with a different city. The remaining addresses resolve only to a road, lane, or building, with businesses identified at other street numbers but none bearing the Defendant's name at the stated number. *Id.* Although Plaintiff ascertained each disclosed address, it could not verify that the address corresponded to a location associated with the Defendant at which service could be effected. Each address is therefore "not known" within Article 1. *NBA Props.*, 549 F. Supp. 3d at 796.

The nine Group G Defendants matched a registry entity at the disclosed address, but the stated premises cannot be shown to be a place at which a document could be delivered to the Defendant. Jiang Decl. ¶ 11; Exs. A, B. No. 18's registered unit is a numbered workstation (工位 10019) inside Room 1701 of a mapped office tower, and No. 25's is a stall (食品厅 30 库) inside a mapped wholesale complex; for both, Amazon's production lists a different address (Chaozhou, Guangdong, and a grain wholesale market in Dalian, respectively), and No. 25's registered address string also carries a Hong Kong company. No. 37's is a shop in a resettlement area; Nos. 46, 52, 61, and 67 are rooms or units in compounds that map only by a unit pattern or at the compound gate, at which nine, three, five, and four entities, respectively, are registered, and No. 52's room shows a different business as a co-tenant; and Nos. 64 and 69 share one registered entity and one market-floor unit (G568), which the map does not list, and No. 69's entity has a second registered

address. For none of these nine did the map searches show a business bearing the Defendant's name at the stated location (for No. 67, the record is an earlier Google Maps capture). A registry entry establishes an entity's registration at the stated address but does not establish that documents can be delivered to that Defendant at that location. Because the address most likely to be each Defendant's was not verified as a real, current location at which the Defendant could be served, and, for Nos. 18 and 25, the platform's records state a conflicting address, each address is "not known" within Article 1. *NBA Props.*, 549 F. Supp. 3d at 796.

Six Defaulting Defendants disclose a Hong Kong Special Administrative Region address (Defendant Nos. 45, 48, 59, 62, 82, and 84). These addresses are likewise unknown. Temu produced only an e-mail address for each of these Defendants, and the storefront addresses either cannot be found or do not correspond to a location connected to the Defendants: Google Maps does not return the address given by Nos. 45, 82, and 84; the room identified by No. 48 is occupied by a business center; and Nos. 59 and 62 resolve to buildings with no room or tenant connected to the Defendants. Jiang Decl. ¶¶ 6, 12; Ex. A. The Convention therefore does not apply to them. Hague Service Convention art. 1. Even if it did, *Kangol* would not bar e-mail service on these Defendants. Hong Kong is a Convention territory as a Special Administrative Region of China, *see Broan-NuTone LLC v. Conglom Hong Kong Ltd.*, No. 23-CV-393-JPS, 2023 WL 8784668, at *2 (E.D. Wis. Dec. 19, 2023), but it maintains its own declarations and, with respect to Article 10(a), has entered "No opposition." HCCH, China (Hong Kong SAR) – Authority.[3] Under *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017), Article 10(a) service is permissible where the receiving state has not objected to service by mail and service by mail is authorized under otherwise-applicable law. Both conditions are satisfied: Hong Kong has not objected, and Rule

[3]Available at https://www.hcch.net/en/states/authorities/details3/?aid=393 (last visited Oct. 15, 2026).

4(f)(3) and the Order authorize service. The Hague Conference's Special Commission has "noted that Article 10(a) includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination." July 2024 Conclusions and Recommendations ¶ 105; *see Deckers Outdoor Corp. v. A AO*, No. 25 C 13065, 2026 WL 1802901, at *3 n.5 (N.D. Ill. June 23, 2026). Therefore, service by e-mail on the Hong Kong Defendants is proper.

One Defaulting Defendant, No. 86 (lasfour), discloses an address in Da Nang, Vietnam. Unlike China, Vietnam "does not oppose to the service of documents through postal channels mentioned in paragraph a of Article 10 of the Convention if the documents forwarded via postal channels are sent via registered mail with acknowledgement of receipt." HCCH, Viet Nam – Declarations.[4] The objection underlying *Kangol* is therefore absent, and the Article 10(a) analysis applicable to the Hong Kong Defendants applies equally to this Defendant. *Water Splash*, 581 U.S. at 284; Jiang Decl. ¶ 13.

The Hague Convention does not apply to the PRC Defendants because each Defendant's address is unknown within the meaning of Article 1. Hong Kong and Vietnam do not oppose the Article 10(a) channel. Service of process by e-mail and electronic publication, as this Court authorized in its Order [16] and as permitted under Federal Rule of Civil Procedure 4(f)(3), was therefore proper as to each Defaulting Defendant, and entry of default judgment is appropriate.

## III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P.

[4] Available at https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1337&disp=resdn (last visited Oct. 5, 2026).

55(a). On May 13, 2026, Plaintiff filed the Complaint [1] alleging Copyright Infringement (Count I). The Defendants were properly served on May 26, 2026. [19]. Despite having been served with process, the Defaulting Defendants have neither participated in these proceedings nor pleaded or otherwise defended this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff requests entry of default against the Defaulting Defendants.

## IV. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

More than twenty-one (21) days have elapsed since service, and none of the Defaulting Defendants identified in First Amended Schedule A has filed an answer or other responsive pleading. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, together with statutory damages under 17 U.S.C. § 504(c)(2), a permanent injunction, and the transfer to Plaintiff of Defaulting Defendants' assets held by Amazon, Temu, Walmart, and PayPal.

### A. Copyright Infringement

To properly plead a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

Copyright protection extends to derivative works, "any . . . form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Here, Plaintiff owns the registered copyrights in the Olivier Le Queinec Works. [1] at ¶¶ 3, 5, 8. The Complaint alleges infringement of Plaintiff's Olivier Le Queinec Works. *Id.* at ¶¶ 17–22. Because the Defaulting Defendants have failed to respond or otherwise plead in this action, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment against the Defaulting Defendants on Count I for willful copyright infringement.

### B. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Copyright Act, a plaintiff may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). In the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). Knowledge need not be established by direct evidence; it may be inferred from a defendant's conduct. *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) (finding that "[w]illful blindness is knowledge, in copyright law").

Here, Defendants knew that their activities constituted infringement or at least acted in reckless disregard of Plaintiff's rights in the Olivier Le Queinec Works because Defendants are

intentionally coupling the Infringing Olivier Le Queinec Products with goods derived from the images in Plaintiff's copyrighted works. The record also corroborates the concealment alleged in the Complaint, [1] at ¶ 7: ten Defaulting Defendants conceal their physical addresses, seventeen display storefront addresses that conflict with their platforms' records or are accompanied there by additional addresses, and several nominally separate storefronts share a single e-mail address or business name (Nos. 54 and 71; Nos. 64 and 69; Nos. 76 and 79; Nos. 82 and 84, which share the business name "Lidando" with No. 80). Jiang Decl. ¶¶ 6, 8; Ex. A. Thus, Plaintiff's request for a statutory damages award of fifty thousand dollars ($50,000) from each Defaulting Defendant for willful copyright infringement of the Olivier Le Queinec Works is appropriate. *See, e.g.*, *Garry Walton v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 26-cv-00597 (N.D. Ill. Mar. 25, 2026); *Ruediger Lauktien v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 26-cv-03092 (N.D. Ill. May 7, 2026).

A substantial award is also consistent with federal policy on online infringement. The Department of Commerce's Internet Policy Task Force, while recognizing that reduced damages may be warranted to avoid impeding new creative works, found that in cases of willful infringement "[t]hese circumstances present the clearest need for deterrence and punishment." White Paper on Remixes, First Sale, and Statutory Damages 99 (Jan. 28, 2016) (Exhibit 1). The Office of the U.S. Trade Representative has likewise documented escalating counterfeit sales online and the services that support them. Special 301 Out-of-Cycle Review of Notorious Markets (Dec. 2015) (Exhibit 2). The widespread availability of infringing products through online sales warrants a finding of willful infringement and an award of fifty thousand dollars ($50,000) against each Defaulting Defendant. *See, e.g.*, *Walton*, No. 26-cv-00597; *Lauktien*, No. 26-cv-03092.

### C. Plaintiff Is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's rights in the Olivier Le Queinec Works. In this District, the "standard for a permanent injunction is essentially the same as for a preliminary injunction except that in seeking a permanent injunction, [Plaintiff] must prove actual success on the merits rather than likelihood of success on the merits." *Hicks v. Peters*, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998); *see Plummer v. Am. Inst. of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996). The remaining factors are (2) that no adequate remedy at law exists and (3) that the plaintiff will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If the Court is satisfied that these three conditions have been met, it then considers the harm that the nonmoving party will suffer if relief is granted, balancing that harm against the irreparable harm the moving party will suffer if relief is denied, and the potential effect on the public interest. *Id.*

#### 1. Plaintiff Has Proved Actual Success on the Merits

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments*, 482 F.3d at 914. Here, Plaintiff owns the registered copyrights for the Olivier Le Queinec Works. Declaration of Olivier Le Queinec (the "Le Queinec Declaration") at ¶ 5. The accused products use the protected works or are derived from the distinctive creative content found in the Olivier Le Queinec Works. *See* [14-1]. This infringement establishes Plaintiff's actual success on the merits of the claim.

### 2. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm Absent Permanent Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). Infringement of the copyrights in the Olivier Le Queinec Works causes similarly irreparable harm. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, devalue the Olivier Le Queinec Works by associating them with inferior-quality goods, and undermine the value of the copyrights by creating the impression that infringement may be undertaken with impunity, which threatens Plaintiff's ability to develop further artwork and markets for the existing works. Le Queinec Declaration at ¶¶ 6–12. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013–14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright-protected work undermines the ability to develop and conduct business). Moreover, because these sellers cannot be located at their disclosed addresses, collection of a monetary judgment would be difficult, leaving injunctive relief as the only effective remedy. Plaintiff will suffer irreparable harm if a permanent injunction is not issued. Le Queinec Declaration at ¶ 13.

### 3. The Balance of Hardships Tips in Plaintiff's Favor

As willful infringers, Defendants are entitled to little equitable consideration. "[O]ne who adopts the mark of another for similar goods acts at his own peril," since he has no claim to the profits or advantages thereby derived. *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (quoting *Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978)). The same is true in the copyright context, where a defendant "cannot complain" of being

forced to cease its infringement. *Warner Bros.*, 824 F. Supp. 2d at 1014–15. Defendants have been profiting from the sale of Infringing Olivier Le Queinec Products, and an injunction would require only that they cease sales of products they had no right to sell. The balance of equities tips decisively in Plaintiff's favor.

**4. Issuance of the Injunction Is in the Public Interest**

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (quoting *Klitzner Indus., Inc. v. H.K. James & Co.*, 535 F. Supp. 1249, 1259–60 (E.D. Pa. 1982)). Protecting the creative content of the Olivier Le Queinec Works protects the integrity of Olivier Le Queinec Products and encourages creative expression. Unless Defendants' unauthorized use of the Olivier Le Queinec Works is enjoined, the public will continue to be confused and misled by Defendants' conduct.

## V. CONCLUSION

Each Defaulting Defendant was served in accordance with this Court's Order, and none has appeared. The Hague Convention does not apply to Defendants whose addresses are unknown and does not prohibit e-mail service on the Defendants in Hong Kong and Vietnam. Plaintiff respectfully requests that the Court enter default and default judgment against the seventy-seven Defaulting Defendants identified in First Amended Schedule A; find that service on each of them by e-mail and electronic publication under the Order [16] and Rule 4(f)(3) was proper; award statutory damages of fifty thousand dollars ($50,000) against each Defaulting Defendant pursuant to 17 U.S.C. § 504(c)(2); permanently enjoin Defaulting Defendants from selling Infringing Olivier Le Queinec Products; and order Amazon, Temu, Walmart, and PayPal to transfer to

Plaintiff all assets in Defaulting Defendants' financial accounts, up to the amount of the judgment, as provided in the accompanying proposed Default Judgment Order.

DATED: October 16, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, publish the documents on a website, and send an e-mail containing a link to that website to any e-mail addresses provided for Defendants by third parties.

*/s/ Keith A. Vogt*
Keith A. Vogt, Esq.